UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-20684-CR-LENARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FRANKIE MEDRANO,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant Frankie Medrano's Motion to Suppress Post Arrest Statements and Items Found Inside 2007 Ford Automobile **[DE 22]**, and Supplement **[DE 31]**. These matters were referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida. **[DE 25, 32]**. A hearing on these matters was held before the undersigned on December 29, 2009. The Court has considered the written and oral arguments, the testimony of witnesses, the applicable law, the court record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant Frankie Medrano's Motion to Suppress **[DE 22]** and Supplement **[DE 31]** should be **DENIED**.

The parties presented testimony from Detective Jorge Rodriguez, of the Miami-Dade Police Department, Detective Michael Stein, of the North Miami Beach Police Department, Detective Julio Estopinan, of the Florida Department of Law Enforcement and task force for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Detective Kenneth Kiple, of the Miami-Dade Police Department and ATF task force, Sergeant John

United States v. Medrano
Case No.: 09-20684-CR-LENARD

McKinney, of the Miami-Dade Police Department and ATF task force, and Detective Orlando Lopez, of the Miami-Dade Police Department.

**Brief Summary of Claims**

Defendant Medrano is accused of knowingly attempting to interfere with interstate commerce by robbery in violation of Title 18, United States Code, Section 1951(a), and knowingly possessing a firearm in furtherance of a crime of violence in violation of Title 18, United States Code, Section 924(c)(1)(A). Defendant Frankie Medrano moves to suppress post arrest statements and items found inside a 2007 Ford automobile on July 25, 2009. With respect to the statements, Defendant Medrano claims that he invoked his right to counsel. With respect to the search, he claims that he did not understand the consent form that he executed at the police station. Therefore, Defendant Medrano argues that his post-arrest statements, as well as any evidence derived from the search of his vehicle, must be suppressed.

**I.   Findings of Fact**

**A.   July 25, 2009 Interview**

Defendant Medrano was arrested outside a Publix Supermarket on July 25, 2009, at approximately 4:15 p.m. He was escorted by the police to the Miami-Dade Police Department headquarters, where he was placed in an interview room by Det. Rodriguez

United States v. Medrano
Case No.: 09-20684-CR-LENARD

and Det. Lopez.[1]  Defendant Medrano requested and was allowed a restroom break, a drink of water, and a cigarette.  Upon his return, Defendant Medrano was advised of his Miranda rights.

Det. Lopez asked Defendant Medrano questions regarding his background, whether he could read, write, and understand English, and whether he was under the effects of medication, alcohol or drugs.  His answers were documented at the top of the MDPD Miranda Warning form.  After the detectives confirmed that Defendant Medrano was coherent, literate, and not under the influence of any substance, Det. Rodriguez explained each right contained in the Miranda form to Defendant Medrano.  Defendant Medrano indicated that he understood each right and that he was waiving same by placing his initials next to each right.  Defendant Medrano then signed the Miranda form waiving his rights.  He did not ask the detectives any questions regarding his rights as explained to him.

After he waived his Miranda rights, Defendant Medrano verbally agreed to speak to the detectives.  Defendant Medrano was advised that he had been implicated in a number of robberies.  He denied involvement initially.  Det. Rodriguez proceeded to show him Robbery Clearinghouse Flyer No. 09-206MC, consisting of two pages.  The first page

---

[1] The undersigned notes that the only discrepancy in the testimony of the witnesses presented by the government was whether Det. Lopez and Det. Rodriguez discussed strategies prior to questioning Defendant Medrano at the station.  The undersigned finds that this discrepancy does not defeat the credibility of either witness' testimony and is attributable to a lapse in memory.

contained still pictures derived from video footage of the perpetrator during the robberies of various businesses. The second page referenced 16 armed commercial robberies in Miami-Dade and Broward Counties, between May 21, 2009 and July 22, 2009. Upon seeing the flyer, Defendant Medrano requested to make a phone call to his family and to have a drink of water and a cigarette. He was given a cigarette and water.

After the break, Det. Rodriguez questioned Defendant Medrano about each individual robbery contained in the flyer. Defendant Medrano confessed to having committed each robbery but would not go into individual details. As he confessed to each robbery, Det. Rodriguez checked it off from the list.

Defendant Medrano further confessed to the detectives that, at first, he had used an air gun in the commission of the robberies, but because he thought it looked fake, he had switched to a real gun. Det. Rodriguez expressed concern regarding the circulation at large of a firearm. At this point, Defendant Medrano advised that the firearm he used to commit the robberies, as well as some clothing, were to be found inside his car, which was parked at the apartment complex where his girlfriend resided. Det. Rodriguez presented Defendant Medrano with a form entitled "Waiver of Constitutional Rights: Consent to Search," which provided consent to search Defendant Medrano's vehicle, a 2007 Ford. Defendant Medrano executed the consent form.

At the conclusion of the interview, Defendant Medrano declined to provide a

United States v. Medrano
Case No.: 09-20684-CR-LENARD

recorded or written statement.[2] Det. Lopez documented Defendant Medrano's statements in a written report. Det. Rodriguez did not issue his own report, but signed off on Det. Lopez' report.

### B. The search

On the day prior to Defendant Medrano's arrest, the police had set up surveillance at his girlfriend's apartment complex, where his vehicle was parked. After Defendant Medrano was arrested, the detectives approached his girlfriend and obtained her consent to search her apartment. Det. Kiple conducted a minimal search of the girlfriend's house pursuant to her signed consent.

Upon obtaining Defendant Medrano's consent to search, Det. Rodriguez advised Det. Estopinan, who was waiting outside the interview room. Det. Estopinan, in turn, informed Det. Kiple, who was already at Defendant Medrano's girlfriend's apartment. Det. Kiple sent Det. Eric Espinosa, an ATF agent, to conduct the search of the vehicle. Det. Espinosa, assisted by Sgt. McKinney, searched Defendant Medrano's vehicle. Sgt. McKinney took pictures and notes of the items retrieved from the vehicle, while Det. Espinosa issued a report.

## II. Conclusions of Law

### A. Post-arrest statements made by Defendant Medrano on July 25, 2009, were voluntary and were properly obtained by the police.

---

[2] After the detectives ended their questioning, Det. Stein went into the interview room and asked Defendant Medrano if he wanted to speak to him about another robbery. Defendant Medrano declined.

It is undisputed that Defendant Medrano was in custody at the time that he made his admissions. A defendant in custody has a Fifth Amendment right to counsel. <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Pursuant to <u>Miranda v. Arizona</u>, a defendant taken into police custody must be advised of certain rights prior to interrogation. 384 U.S. at 479. After being advised of these rights, a defendant must be given the opportunity to exercise them at any point. <u>Id</u>. If in any way and at any stage of the process, a defendant indicates that he wishes to invoke his Fifth Amendment right to consult with an attorney, there can be no further questioning. <u>Id</u>. at 444-45. That is, a defendant who expresses his desire to have counsel in dealing with the police is not to be subjected to further interrogation by the authorities until counsel has been made available to him, unless the defendant himself initiates further communication with the police. <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981). However, a defendant's assertion of the right to counsel must be unambiguous and clear. <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994). If a defendant makes a reference to an attorney that is ambiguous or equivocal, such that a reasonable officer in light of the circumstances would have understood only that the defendant might be invoking the right to counsel, cessation of questioning is not required. <u>Id</u>. When a suspect's statements regarding counsel fail to meet the requisite level of clarity, officers are not required to cease questioning. <u>Id</u>.

Post-arrest confessions are admissible when the <u>Miranda</u> requirements have been met and the defendant has knowingly, voluntarily, and intelligently waived those rights.

United States v. Medrano
Case No.: 09-20684-CR-LENARD

United States v. Jones, 32 F.3d 1512, 1516-17 (11th Cir. 1994). In custodial situations, the burden is on the government to establish, by a preponderance of the evidence, that the defendant was advised of his constitutional rights pursuant to Miranda, that the defendant made a knowing and voluntary waiver of those rights, and that any subsequent statements were voluntarily made. United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997).

Defendant Medrano claims that he made a clear statement to the police that he did not want to speak to them without a lawyer present, which request was ignored. However, Defendant Medrano's claim that he requested a phone call does not establish a clear and unambiguous invocation of the right to counsel. Davis, 512 U.S. at 462 (holding that the statement "maybe I should talk to a lawyer" was not an invocation of the right to counsel); see also, Dormire v. Wilkinson, 249 F.3d 801, 805 (8th Cir. 2001) (finding that even a suspect who asks, "Could I call my lawyer?" while in custody has not made a clear and unambiguous request for counsel such that an officer is required to stop the interrogation). In fact, the evidence did not show that Defendant Medrano took any action that would have required the police to stop questioning. To the contrary, the evidence demonstrated that Defendant Medrano was read his rights, that he understood them, and that he knowingly signed a Miranda waiver. Under these circumstances, the police were under no obligation to end the interrogation.

The Court finds insufficient evidence to support Defendant Medrano's claim that he unambiguously and unequivocally invoked his right to counsel. The evidence does not

United States v. Medrano
Case No.: 09-20684-CR-LENARD

support suppression of the admissions voluntarily elicited from Defendant Medrano's questioning by police. Thus, the post-arrest statements made by Defendant Medrano to the police while in custody on July 25, 2009, were validly obtained and need not be suppressed.

Defendant Medrano further claims that his confession was involuntary because the police threatened to ransack his girlfriend's apartment unless he gave a statement. The voluntariness of an admission is determined under the "totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). The pertinent issue in this determination is "whether the person's will to choose between remaining silent and making a statement is affected by any undue pressure." United States v. Grimes, 911 F.Supp. 1485, 1497-98 (M.D. Fla. 1996), aff'd 142 F.3d 1342 (11th Cir. 1998). An admission obtained by any sort of threats or violence, or obtained by any direct or implied promises, or by the use of any improper influence is deemed involuntary. Colorado v. Connelly, 479 U.S. 157, 170 (1986).

Here, there is no evidence that, during the police questioning, Defendant Medrano was threatened with physical damage to the home of his girlfriend unless he admitted to having committed the robberies. According to the testimony elicited at the hearing from various witnesses, there were no threats of any kind made during Defendant Medrano's interview. Taking into account the totality of the circumstances in this case, Defendant Medrano's statements were freely and voluntarily given. The evidence simply does not

United States v. Medrano
Case No.: 09-20684-CR-LENARD

support a finding that there was any improper conduct by the police with respect to Defendant Medrano's questioning. Accordingly, the undersigned finds that any statements made by Defendant Medrano on July 25, 2009, were voluntary and, thus, should not be suppressed.

**B.     Defendant Medrano's consent to search his car was valid.**

Defendant Medrano claims that his consent to search his car was not valid, because it was not voluntarily and knowingly given. He argues that he did not understand that he was providing consent to search his car. Rather, he thought he was signing an authorization to release the car he was driving when he was arrested to his girlfriend. However, the evidence adduced at the hearing shows that Defendant Medrano was advised of the contents of the consent to search form, which form was clearly entitled "Waiver of Constitutional Rights: Consent to Search." At no time did Defendant Medrano ask the officers for clarification regarding the scope of what was referenced in the document. There is nothing in the record to support Defendant Medrano's allegation that he did not understand the contents of the consent to search form. Moreover, according to the testimony, Defendant Medrano was presented with the consent form only after having voluntarily advised the officers that the gun he used in the commission of the robberies was inside his car. Under the totality of the circumstances, the evidence fails to support Defendant Medrano's claims that he did not understand the consent to search form. Thus, the undersigned finds that the search of Defendant Medrano's vehicle was valid and recommends that his Motion to Suppress be denied.

United States v. Medrano<br>Case No.: 09-20684-CR-LENARD

Even if the evidence demonstrated that Defendant Medrano did not consent to the search of his vehicle, his post-arrest statements regarding the whereabouts of the gun provided the officers with sufficient probable cause to search his vehicle. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more") (citations omitted). Probable cause to conduct a search exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband." United States v. Clark, 559 F.2d 420, 424 (11th Cir. 1977) (citations omitted).

Defendant Medrano's voluntarily given post-arrest statements led the interviewing officers to reasonably believe that his car contained contraband, i.e. the firearm employed in the commission of various robberies. The interviewing officers relayed the information to the officers who were already at the location of the vehicle.[3] The officers at Defendant Medrano's girlfriend's apartment complex, where the car was located, had been in communication with the interviewing officers at the station throughout Defendant Medrano's questioning. Thus, the officers maintained "at least a minimal level of communication during their investigation." United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985); United States v. Esle, 743 F.2d 1465, 1476 (11th Cir. 1984), *overruled on other grounds by* United States v. Blankenship, 382 F.3d 1110, 1122 n. 23 (11th Cir.

---

[3]According to the testimony, Defendant Medrano's car had been under surveillance since the day before his arrest.

United States v. Medrano
Case No.: 09-20684-CR-LENARD

2004), ("where a group of officers is conducting an operation and there is at least a minimal communication among them, we look to the collective knowledge of the officers in determining probable cause"). Accordingly, there is no problem imputing probable cause among the officers. On that additional basis, the undersigned finds that the search of Defendant Medrano's vehicle was valid and recommends that his Motion to Suppress be denied.

## III.  Recommendation

After conducting a thorough review of Defendant Medrano's arguments, the oral testimony, the record evidence, as well as the applicable legal principles, the undersigned concludes that none of the arguments advanced by Defendant Medrano support suppression of the post-arrest statements elicited from his questioning, nor the evidence found in his vehicle, on July 25, 2009. Moreover, there is no evidence of record to support the allegations raised by Defendant Medrano of his invocation of the right to counsel or of threats made by the police to search his girlfriend's residence unless he gave a statement. Defendant Medrano's claims are without merit.

In light of the foregoing, it is the **RECOMMENDATION** of the undersigned that Defendant Frankie Medrano's Motion to Suppress Post Arrest Statements and Items Found Inside 2007 Ford Automobile **[DE 22]**, and Supplement **[DE 31]** be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District

United States v. Medrano
Case No.: 09-20684-CR-LENARD

Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this ___ day of January 2010.

_____
**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Joan A. Lenard
    All Counsel of Record